Vernon Robert **GUTHREY**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17817.

Court of Criminal Appeals of Oklahoma.

Feb 28, 1973.

Judd L. Black, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

BUSSEY, Judge:

Appellant, Vernon Robert Guthrey, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, Case No. CRM–72–598, for the offense of Unlawful Possession of a Controlled Drug. His punishment was fixed at sixty (60) days in the County Jail, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Detective Jerry Legg testified that on the evening of April 10, 1972 he and other officers went to a residence located at 3016 N.W. 45th Street, Oklahoma City, pursuant to the issuance of a search warrant directing a search of the house for narcotics. As he entered the residence, the defendant was standing in the bathroom door. Defendant slammed the door and Officer Legg forced the door open. The defendant was attempting to flush a needle and syringe down the commode. He conducted a search of the residence and found a bottle of a "yellow liquid substance" in a cotton glove in the southeast bedroom and a metal Tum's case containing a red capsule in the attic. He testified that there were two other persons in the house at the time of the search and identified them as Charles Edwin Howell and the defendant's stepson. The defendant gave his address as that of the premises searched. On cross-examination, he testified that Charles Howell had some form of narcotic on his person and that Howell was known to him as a person addicted to narcotic drugs.

Don Flint, a chemist with the Oklahoma State Bureau of Investigation, testified that he received State's Exhibits No. 1 and 2 from the Oklahoma City Police Department and analyzed the contents therein. In his opinion, both items contained barbiturates.

For the defense, Clifton Daniel testified that he was the defendant's stepson and lived at 3016 N.W. 45th Street with Charles Howell. His father had formerly lived there, but had moved on March 26.

He testified that Charles Howell was a "very sick person" and was on a methadone program. On the evening in question, his father came for a visit for the purpose of delivering lunch money and gathering some belongings he had not taken when he had moved the previous month. He denied any knowledge of the barbiturates.

Brenda Manning testified that she was Randy Daniel's girlfriend. On April 10, Randy was living with a man named Charles at 3016 N.W. 45th Street.

Steven Hampton, fourteen years of age, testified that the defendant had lived continuously at his mother's apartment since March 26 and that he and the defendant shared a bedroom in the apartment.

The first proposition asserts that the motion to suppress the evidence should have been sustained by the trial court. Defendant argues that the affidavit for the search warrant was constitutionally insufficient because the affiant failed to meet requirements essential for the disinterested magistrate to make a judicial determination based thereon. The affidavit for search warrant provides, in relevant part, as follows:

"[T]he affiant received information from a heretofore proven reliable confidential informant, who has in the past given information in reference to narcotics, and narcotic offenders, and as a result of this information the affiant has made a number of arrests and has gotten convictions in some of the cases. The informant stated to the affiant that on the 10th day of April the informant was at the above address and observed the above listed narcotics, and observed known narcotic users and characters with felony records. The informant further states that the narcotics were obtained by Charles Edwin Howell and Pat Collyar from a burglary in the State of Arkansas."

Defendant cites as authority Leonard v. State, Okl.Cr., 453 P.2d 257 (1969); Davis v. State, Okl.Cr., 453 P.2d 261; Limon v. State, Okl.Cr., 453 P.2d 263; Sturgeon v. State, Okl.Cr., 483 P.2d 335; Barnes v. State, Okl.Cr., 498 P.2d 408. In *Barnes, supra,* the affidavit stated:

"Information received from an informant that has been used in the past and proven to be reliable that he observed the above listed property; officers made an investigation and found this information to be true and correct. \* \* \*"

In finding this affidavit to be defective, Judge Brett stated:

"\* \* \* This affidavit is more significant for what it does not state, rather than what is alleged therein. There are no details as to how or when the informant had been used previously, or in what way he had proved to be reliable. There are no details as to when or how he saw the listed property. There are no details as to when or how officers made independent investigation. There are no details as to how the investigation disclosed that the informant's information was true and correct. In short, the affidavit is void of factual details from which to conclude that the informant was credible or his information reliable. Rather the information is nothing more than conclusionary statements."

In the instant case, the affidavit states that the informant had previously supplied information concerning narcotics and narcotic offenders; that arrests had been made as a result of the information supplied by the informant and convictions were obtained in some of those cases; and that the informant was on the premises on the day the warrant was issued and observed narcotics and known narcotic users. In Buchenburger v. Commonwealth, Ky., 482 S.W.2d 747 (1972), the sufficiency of a similar affidavit for search warrant was questioned as to whether the affidavit sufficiently established the credibility of the informant. The relevant portion of the affidavit stated:

"'On the 5th day of September 1970, at approximately 5:00 a.m./p.m., affiant received information from/observed a

confidential informant who has in the past been reliable and has been responsable [sic] for two (2) narcotic arrests in the past year. Informant states that on this date, September 5, 1970 at 4:00 pm, he was at the home of Henry Buckenberger or Buchenburger (he was unsure of the spelling) at 6015 Bardstown Road and while there he observed Henry Buckenberger or Buchenburger with a large quantity of marihuana. Informant states that Buchenburger or Buckenberger is a pusher and sells marihuana by the pound. Informant further states that he was asked by Buchenburger or Buckenberger if he wanted to be a runner for him. Informant states that he was told his part of a $20.00 dollar bag would be $5.00 dollars.' "

In upholding the validity of the affidavit, the Court stated:

"There are many things which a magistrate may consider in making his independent determination of the credibility of an informant. The length of time that the affiant has known the informant is an important factor. A statement by affiant of the reputation and standing of the informant in the community is relevant. That information previously furnished by the informant had always proved to be accurate would be indicative of reliability. Ideally an affidavit would state that affiant had known the informant for a number of years; that his reputation for truth and veracity was good; that his standing in the community was excellent and that on a number of occasions past the informant had furnished information to the affiant which had always been accurate. The affidavit could then set forth instances in which the informant had previously furnished correct information. Such an affidavit would clearly establish the credibility of the informant.

"The instant affidavit falls far short of the ideal yet it goes further than the affidavits condemned in *Berkshire* and *Thompson*[1] for here in addition to an expression of affiant's belief in the reliability of the informant there was added the statement that the informant had been responsible for two narcotics' arrests within the past year.

"A statement to the effect that the informant was responsible for two arrests within the past year does not necessarily import that the information furnished by the informant was accurate or that it led to convictions. The language does not negate that the informant may have furnished false and spurious information which resulted only in the arrest of two innocent men on narcotics charges. But to read such a meaning into the language used in the affidavit would require a strained interpretation which does not comport with what laymen would ordinarily understand from the language used.

"We are confronted on one hand with the necessity to protect citizens from unreasonable searches and seizures as commanded by both the State and Federal Constitutions. On the other side of the coin in the loss of protection to society that comes about when supertechnical requirements as to affidavits for search warrants result in the absolute dismissal of criminal charges solely because some magistrate, county judge, or police judge, not learned in the law, did not appreciate or understand the technical niceties involved.

"With reference to affidavits for search warrants the United States Supreme Court said in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

'* * * Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the

1. Berkshire v. Commonwealth, Ky., 471 S.W.2d 695 (1971). Thompson v. Commonwealth, Ky., 472 S.W.2d 884 (1971).

police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. * * *.'

The affidavit may reasonably be interpreted as stating that the affiant believed the informant to be reliable and that his belief was based upon the fact that on two previous occasions the informant had furnished information which proved to be accurate. This court believes that the issuing magistrate had reasonable grounds to consider the informant reliable and that to hold otherwise would constitute the type of hypertechnical interpretation denounced in *Ventresca*."

■ We are of the opinion that the instant affidavit, although falling short of the ideal affidavit as described in *Buchenburger, supra*, set forth sufficient grounds for the magistrate to consider the informant reliable and establish probable cause for the issuance of the warrant.

■ An affidavit for a search warrant based upon information received from a reliable informant should state the length of time the affiant has known the informant; that his reputation for truth and veracity was good; and that on a number of occasions past the informant has furnished information to the affiant which had been accurate. The affidavit should then set forth general instances in which the informant had previously furnished correct information. The affidavit should further state whether the informant himself observed the presence of contraband or articles to be seized upon the premises stating the date of the observation or that the belief of the reliable informant is based upon admission of one of the principals maintaining or keeping such contraband or articles on the premises.[2] If the information was received by the affiant from a "citizen informant", the affidavit should reflect that the informant enjoyed a good reputation in the community; that he had no prior criminal record; and that he was gainfully employed and other details within the knowledge of the affiant that the informant is reliable.

■ The final proposition contends that the trial court erred in overruling the demurrer to the sufficiency of the evidence. Defendant argues that the State failed to prove that the defendant resided at the premises and that further the State failed to show knowledge on the part of the defendant as to the presence of the barbiturates. The evidence as to whether the defendant resided at the address was conflicting. Officer Legg testified that the defendant stated that he lived on the premises wherein the defendant's witnesses testified that the defendant did not reside on the premises. The evidence does establish that the defendant did not have exclusive possession of the premises. Both the State's witnesses and the defendant's witnesses testified that the two other persons resided there. In Riggs v. State, Okl.Cr., 486 P.2d 643, we stated:

> " 'Where a person is present in premises where marihuana is found, but does not have the exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of marihuana and had control of it unless there are additional independent factors showing his knowledge and control.' "

■ We are of the opinion that the evidence in the instant case, although circumstantial, does, in fact, establish the "addi-

2 Leonard v. State, Okl.Cr., 453 P.2d 257 (1969).

tional independent factor showing his knowledge and control" of the barbiturates. When Officer Legg entered the premises, the defendant slammed the door to the bathroom and attempted to flush a syringe and needle down the commode. See Jones v. State, Okl.Cr., 492 P.2d 1104.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.