Terry Allen **YINGST**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–18177.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1973.

Terry L. Meltzer, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Terry Allen Yingst, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF-72-686, for the offense of Unlawful Possession of a Controlled Drug, his punishment was fixed at two (2) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the non-jury trial the party stipulated to the evidence as follows:

"That Tulsa County Deputy Sheriff Gary James would testify that on April 5, 1972, he went to defendant's home to execute a search warrant. That upon arriving at defendant's home, he discovered the defendant and six other people inside the premises. That he thereupon executed the search warrant by conducting a search of the premises; and over the objection of the defendant, Gary James would further testify that while searching the premises, he found what he believed to be methamphetamine tablets contained in a sugar canister in de-

fendant's kitchen. Gary James would also testify that he is an experienced narcotics officer, and that the defendant appeared to be under the influence of some stimulant drug such as methamphetamine. Mr. Joe Norton, a chemist experienced in drug identification, would testify that he chemically examined the tablets found in defendant's home by Gary James, and that the tablets did in fact contain methamphetamine. It is further stipulated that defendant's home is located within Tulsa County, Oklahoma."

The first proposition asserts that the trial court committed reversible error in overruling defendant's motion to quash the search warrant in admitting evidence obtained in the subsequent search. The record reflects that the affidavit for search warrant stated in part as follows:

"That he has information from a reliable informant who has supplied me with information in the past and whose information has led to 3 convictions for narcotics offenses in the district courts of Tulsa county. The informant told me that during the evening hours of 4-3-72 he was at the above address with the above defendants there. They told him this was their pad for a while. The defendants also showed the informant several hundred pills which the defendants stated 'had come out of a drug store burglary that they had just pulled.' They also stated they had plenty of desoxyn for sale, that had come out of the burglary. James Wentworth, told the informant that he would sell 'one table' of desoxyn for 1.00 dollar, and there was plenty to go around. The informant also told your affiant that he heard and saw a police radio receiving police signals. James Wentworth made the remark to your informant that this is the way they kept track of the 'pigs' and that this set-up made them 'bust-proof.' Your affiant states that since narcotics are being sold that he fears they may be all sold, removed from the premises or lost to recovery and therefore asks that this search warrant be allowed to be served at night."

■ Defendant first argues that the term "desoxyn," which is used to describe the pills that the informant allegedly saw, is not listed in any of the schedules as a controlled dangerous substance under the Uniform Dangerous Substances Act of the State of Oklahoma. We need only observe that "desoxyn" has been defined as a trademark for the preparation of methamphetamine hydrochloride. See Dorland's Illustrated Medical Dictionary, 24th Edition, page 406. Title 63 O.S. 1971, § 2-206, provides in part as follows:

"C. Any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."

■ Defendant next argues that the affidavit search warrant did not sufficiently establish the reliability of the informant. In the recent case of Guthrey v. State, Okl.Cr., 507 P.2d 556, wherein the sufficiency of a similar affidavit was held valid, we adopted the reasoning of the Kentucky court in Buchenburger v. Commonwealth, 482 S.W.2d 747. In *Buchenburger,* supra, the court said:

"We are confronted on one hand with the necessity to protect citizens from unreasonable searches and seizures as commanded by both the State and Federal Constitutions. On the other side of the coin is the loss of protection to society that comes about when supertechnical requirements as to affidavits for search warrants result in the absolute dismissal of criminal charges solely because some magistrate, county judge, or police judge, not learned in the law, did not appreciate or understand the technical niceties involved.

"With reference to affidavits for search warrants the United States Supreme Court said in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

' * * * Recital of some of the underlying circumstances in the affidavit is

# 1324

essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' "

We therefore find this proposition to be without merit.

The final proposition contends that the evidence was insufficient to support a guilty verdict. Defendant argues that there was no evidence that defendant had exclusive dominion and control over the controlled drugs. In Riggs v. State, Okl. Cr., 486 P.2d 643, we stated:

> "Where a person is present in premises where marihuana is found, but does not have the exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of marihuana and had control of it unless there are additional independent factors showing his knowledge and control."

We are of the opinion that the evidence in the instant case, although circumstantial, does in fact establish the "additional independent factors showing his knowledge and control" of the methamphetamine tablets. The stipulation as to the evidence states that the tablets were found in a sugar canister of defendant's kitchen. Further, that defendant appeared to be under the influence of a stimulant drug such as methamphetamine.

The judgment and sentence is accordingly affirmed.