**Larry James GAMBLE, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–556.**

Court of Criminal Appeals of Oklahoma.

March 4, 1976.

Rehearing Denied March 29, 1976.

Ronald H. Mook, Tulsa, for appellant.

Larry D. Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry James Gamble, hereinafter referred to as defendant, was charged and tried before a jury in a two-stage proceeding in the District Court, Tulsa County, Case No. CRF-74-2756, and convicted for the offense of Unlawful Possession of Controlled Drugs (Heroin) with Intent to Distribute, After Former Conviction of a Felony. Punishment was assessed by the jury at a term of thirty-five (35) years' imprisonment. The defendant was also convicted in a separate trial before the court, without a jury, Case No. CRF-74-2763, for the offense of Unlawful Possession of Controlled Drugs (Morphine), After Former Conviction of a Felony, and sentence was imposed by the court at a term of five (5) years' imprisonment, such sentence to run concurrently with the sentence imposed in Case No. CRF-74-2765. From said convictions, the defendant has perfected his appeal.

In the jury trial of Case No. CRF-74-2765, the State's first witness was Officer C. V. Hill, who testified that he was a patrol officer for the City of Tulsa on November 20, 1974, and that he was at a residence located at 623 E. 54th Street North, with narcotics Officers Don Bell and Robert Boston. The witness testified that he stayed in the living room with the defendant and read the defendant the Miranda warnings. The defense then requested, and was granted, a hearing, out of the presence of the jury, and during the examination Officer Hill stated that while on a routine patrol he received a radio transmission requesting him to stop a Buick Riviera. He further stated that, absent the request, he had no reason to stop the vehicle. The witness related that narcotics Officers Bell and Boston arrived shortly after the stop and as they approached he told the defendant that they were police officers. Officer Hill also stated that one of the officers was armed with a police shotgun and that the defendant, accompanied by one narcotics officer, then drove the Buick back to the house at 623 East 54th Street North. The witness stated that he followed the Buick back to the residence and upon his arrival entered the house and observed the defendant in the living room and a search warrant laying on top of the table.

The defendant then took the stand for the limited purpose of showing the events surrounding his arrest and to support his Motion to Suppress. He stated his residence was 4118 N. Frankfort Ave., Tulsa, Oklahoma. The defendant testified that he was stopped by a patrol car flashing its red lights and that about three minutes later two other men, one armed with a shotgun, came and told him to get in his car and drive to his house. He stated that he started to drive to his house, but was told to drive to the house from which he had just departed. Upon arrival at the residence, the defendant was asked if anyone was inside and he responded that his girlfriend was. The police told him to open the door, which he did with his key. The defendant stated that he did not receive the warrant until after he was inside and that he thought approximately six other people had access to the house. At the close of the hearing the defense moved to suppress any evidence obtained subsequent to the arrest. The District Court sustained the Motion insofar as any transaction prior to the entry into the house.

The State's second witness was narcotics Officer Don Bell who testified that he, accompanied by Officer Boston, went to 623 E. 54th Street North to execute a search warrant and upon their arrival observed a late model Buick leaving the residence and requested a patrol car to stop it. After the car had been stopped, Officer Bell testified that he rode back to the residence with the defendant and told him that he was a police officer and had a search warrant for the house. After arriving at the house, and before entering, the witness testified that he gave the defendant the search warrant and the defendant then opened the door.

Officer Bell testified in detail about the execution of the search and identified various items which were found. Among those items were a blue duffel bag containing a jar of lactose and sacks of balloons; a white drug store sack in which he found syringes, needles, a funnel, and a packet (State's Exhibit 5), and a balloon (State's Exhibit 6), each containing a brown powderish substance which appeared to be heroin; a gray attache case which was opened by the defendant and found to contain a 9 mm. pistol, $4,445.00 in cash, photographs and personal papers belonging to the defendant; and a small pin, needle and syringe found on a coffee table in a bedroom. After the discovery of these items, the officer testified that he placed the defendant under arrest and Officer Hill read him the Miranda warnings. Officer Bell further testified that heroin is usually sold on the street either in tinfoil bindles or in balloons, and that it is often blended with lactose or some other substance. He estimated the street value of the heroin in State's Exhibit No. 5 to be between $75,000.00 and $100,000.00. He also stated that the defendant told the officers that the rest of the house was "clean" after the heroin was discovered. On cross-examination, the officer stated that letters addressed to the defendant were found during the search and that the address on the envelopes was different from the address of the residence searched. Officer Bell also stated that it had been determined before the search that the defendant did not own the residence.

The State's last witness was Ken Michael Williamson, a forensic chemist for the Tulsa Police Department. He identified the substance in State's Exhibits 5 and 6 as being "reasonably pure heroin." He also identified various exhibits as containing heroin or heroin residue.

The State then rested. The defendant renewed all Motions and demurred to the evidence presented on behalf of the State. The Motions and Demurrer were overruled and the defendant rested.

In Case No. CRF–74–2763, the defendant incorporated all arguments made in Case No. CRF–74–2765, and entered a stipulation with the State based on the record established in the preliminary examination and the evidence presented in the trial of Case No. CRF–74–2765.

■ The defendant's first assignment of error is that the trial court erred in overruling his Motion to Quash the search warrant in that the warrant was a product of a deficient affidavit. In support of this assignment, the defendant's first proposition is that the affidavit failed to state facts from which the magistrate could find probable cause. The affidavit in the instant case reveals that the affiant had been informed by a credible informant that Larry Gamble had in his possession a large quantity of heroin. The affiant attested that the informant had purchased heroin in the said residence from the defendant. The affidavit described in detail how the purchase was made, and specifically located and identified the house to be searched. The affiant also stated that he had known the informant for two years and that he had provided other information which had resulted in numerous arrests and convictions.

In *Guthrey v. State*, Okl.Cr., 507 P.2d 556 (1973), we stated in paragraphs 1, 2 and 3 of the Syllabus:

"1. An affidavit for a search warrant based upon information received from a reliable informant should state the length of time the affiant has known the informant; that his reputation for truth and veracity was good; and that on a number of occasions past the informant has furnished information to the affiant which had been accurate.

"2. The affidavit should then set forth general instances in which the informant had previously furnished correct information.

"3. The affidavit should further state whether the informant himself observed the presence of contraband or articles to

be seized upon the premises stating the date of the observation or that the belief of the reliable informant is based upon admission of one of the principals maintaining or keeping such contraband or articles on the premises."

See also *Yingst v. State,* Okl.Cr., 513 P.2d 1322 (1973).

We are of the opinion that the affidavit met the required standard and set forth sufficient grounds to consider the informant reliable and thus establish that probable cause did exist for the issuance of a search warrant.

The defendant's second proposition in support of his first assignment of error is that the affidavit failed to sufficiently describe the person to be searched. In the instant case, the warrant was not issued for the search of a person of the defendant, but rather it was issued to authorize a search of the premises at 623 East 54th Street North. Accordingly, we find the first assignment of error to be wholly without merit.

The defendant's second assignment of error is that the District Court erred in admitting evidence obtained through unlawful service and execution of the search warrant. It is the defendant's main contention that through coercion and by using him as an agent, the police "constructively broke" into the house. In support of this argument the defendant relies on *Sabbath v. U. S.,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1969). In *Sabbath,* the police went into the home of the defendant by opening an unlocked door and entering without announcing their authority or purpose. There the United States Supreme Court held the search to be invalid and ordered the fruits of the search suppressed; however, *Sabbath* does not, as the defendant urges, stand for the proposition that officers may never enter into a residence without an announcement of their presence and authority. In situations where an announcement would be a useless gesture, endanger life, subject property to destruction, or allow a suspect to escape, an announcement of authority is not necessary. *Matthews v. United States,* D.C. App., 335 A.2d 251 (1975).

In discussing the origin and application of the useless gesture rule, the Court in *Der Garabedian v. United States,* 372 F.2d 697, at 699 (5th Cir. 1966), stated:

"Appellant contends that when the officers, having a valid search warrant, opened the unlocked screen door and walked into the dining room without first making an attempt to secure permission, this constituted a 'breaking' . . . thus making the evidence seized inadmissible. However, as we view this case, it is not necessary to decide whether or not a breaking actually occurred, because, even if it did, the facts surrounding the entry bring it within an exception recognized in *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

"In *Miller* the officers had neither an arrest nor a search warrant, and physically broke open a chained door. Although the Court said that the rule 'seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission', it noted that such an announcement would be a 'useless gesture' if 'the facts known to officers would justify them in being virtually certain that the defendant already knows their purpose' . . . ."

In the instant case, the facts show that the defendant was aware of the authority and the presence of the police. We accept the State's contention that knocking on the door and announcing their presence, as required by *Sabbath,* would have been a useless gesture by the police. Particularly is this true when the testimony of Officer Bell affirmatively and clearly states that he served the search warrant on the defendant prior to the defendant opening the door with a key.

Furthermore, the burden of proving the invalidity of execution of a search warrant is on the person attacking its execution. In *Edwards v. State,* 95 Okl.Cr. 37, 239 P. 2d 434 (1951), we stated in the second paragraph of the Syllabus:

"The burden of proving the invalidity of the execution of a search warrant is on the person attacking its validity, and evidence of acts and circumstances showing the invalidity of the execution or service must be alleged and evidence presented in support thereof. . . . "

Since an announcement of purpose and authority by the police would have been a useless gesture, and since the defendant has failed to show sufficient circumstances to invalidate the execution of the warrant, and since the testimony of Officer Bell established that he served the search warrant on the defendant prior to the entry to the house, we find this assignment of error to be without merit.

■ The defendant's third assignment of error is that the District Court erred in not granting his Motion to Quash the search warrant on the ground that the warrant was the product of a prior unlawful search. This contention is predicated on the fact that approximately twenty-four hours before the warrant was issued, an informant purchased heroin from the defendant at the subject residence. It is asserted that the informant's observations amounted to an illegal search. This contention is without merit. Clearly, the informant was present only to detect whether or not the defendant was selling heroin. It was the informant's detection of the probability that a crime was being committed that was essential for the issuance of the search warrant. No evidence was offered by the State or the defendant to give credence to the claim that the informer gathered evidence illegally while at the house. Therefore, the District Court did not err in overruling the Motion to Quash the search warrant.

■ The defendant's fourth assignment of error is that the trial court erred in admitting evidence obtained as a result of an unlawful arrest. The defendant argues that his arrest was a subterfuge arrest, and was made without probable cause. Therefore, according to the defendant, the subsequent search of the house, even done under the authority of a valid search warrant, was invalid and all items found during the search should be suppressed. This conclusion does not follow from his premise.

As stated in *People v. Ball,* 162 Cal. App.2d 465, 476, 328 P.2d 276, 278 (1958):

" . . . '[T]he legality of an arrest is not necessarily determinative of the lawfulness of a search incident thereto. * * * [S]ome searches may be reasonable and hence lawful in the absence of a warrant or an arrest * * *' *People v. Brown,* 45 Cal.2d 640, 643, 290 P.2d 528, 530. A search or seizure may be justified even though it is in no way related to an arrest. . . . We know of no rule by which a valid search, justifiable without reference to an arrest, is voided by the unlawfulness of an arrest upon which the search does not depend."

The legality of the arrest in the instant case is certainly questionable; however, since the search in issue was not made as incident to arrest, but rather under the authority of a valid search warrant, we find that the trial court properly denied the defendant's Motion.

■■ The defendant's fifth assignment of error is a dual one. He contends that the trial court erred in admitting both the 9 mm. pistol and narcotics paraphernalia found in the residence during the execution of the search warrant.

In support of the proposition that the admission of the pistol was erroneous, the defendant asserts that the pistol was evidence of a crime not on trial, a proper foundation was not laid for its admission, a connective link to the defendant was not established, and its admission was unduly prejudicial to the defendant.

The trial court apparently believed that, even if the pistol was evidence of another

crime, it was material in that it tended to show motive and intent and the court admitted the pistol on the ground that it was res gestae evidence.

At the outset, it must be noted that since the defendant did not take the stand and since there was no reference to previous felony convictions, the jury had no reason to believe that the defendant's possession of the pistol was in any way unlawful. Therefore, the contention that the pistol was evidence of a crime not on trial is without merit. Furthermore, in evaluating the defendant's claim that the admission of the pistol was prejudicial, the burden of establishing prejudice is on the defendant. As stated in *Moser v. State*, Okl.Cr., 509 P.2d 184, at 185 (1973):

"... It is a familiar rule of this court that on appeal the burden of establishing prejudice from the admission of incompetent evidence is upon the defendant. *Friday v. State*, Okl.Cr., 348 P.2d 1083 (1960)."

There may be some situations in which the admission of weapons may be unduly prejudicial. *Berg v. State*, 97 Okl.Cr. 320 262 P.2d 913 (1953). In *Berg*, the defendant was charged with the unlawful possession of intoxicating liquor. During the course of his trial, the prosecution paraded before the jury over forty items, including several weapons, stoves, a large photograph of the raiding party, and a still. There we held that because the weapons, stoves and photograph had no bearing on the charge of possession of intoxicating liquor, the accused had not received a fair trial. Such is not the situation in the instant case. As stated in 20 O.S.1971, § 3001:

"No judgment shall be set aside or new trial granted by any appellant court of this state in any case, civil or criminal, on the ground ... of improper admission or rejection of evidence ... unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial viola-

tion of a constitutional or statutory right."

It is our belief that this error did not result in a miscarriage of justice as provided in 20 O.S.1971, § 3001. Therefore, the allegation that admission of the pistol was reversible error is rejected.

 The defendant's second proposition in support of his fifth assignment of error is that the trial court erred in admitting into evidence narcotics paraphernalia found in the residence. It is evident from the record that the narcotics paraphernalia was introduced to show the defendant's knowledge of the substance being heroin. In *People v. Noland*, 61 Cal.App.2d 364, 366, 143 P.2d 86, 87 (1943), it is stated:

"Appellant complains of the ruling admitting testimony of the possession of the syringe and hypodermic needle. Proof of the possession of these instruments, which are customarily used in the administration of the drug, and which were found concealed with the drug, was relative to the main issue—possession of the drug. ..."

Unlawful possession of narcotics is established by proof that the accused exercised some form of dominion and control over the drug with knowledge of its narcotic character. *Staples v. State*, Okl.Cr., 528 P.2d 1131 (1974). The possession of the narcotics paraphernalia in the instant case went to the issue of the defendant's knowledge of the substance he possessed and was relevant for jury consideration. Accordingly, we find defendant's fifth assignment of error to be without merit.

 The first proposition in the defendant's sixth assignment of error is that the State failed to establish that he had knowledge, dominion and control of the heroin. We disagree. While the mere presence of the accused in a place where a controlled substance is found is not sufficient to establish knowledge, dominion and control [*Clarkson v. State*, Okl.Cr., 529 P. 2d 542 (1974)], additional, independent factors may establish that the defendant

had dominion, control, and knowledge of the substance in question. Such factors existed in the present case. The jury heard testimony from Officer Bell about the defendant opening the door to the residence with his own key, and how the defendant opened a gray attache case found in the course of the search. The jury also heard testimony about the discovery of personal papers, photographs, and a drivers license belonging to the defendant. In addition, Officer Bell testified that when the search was nearly finished and the defendant had been given his Miranda warnings, he asked the defendant if there were any more drugs in the residence. The officer testified on direct examination as follows:

"Q. What conversation was had, Officer?

"A. We—the conversation about the key to the brief case and where it was located. We had conversation about if there was any additional drugs in the residence.

"Q. What did he say?

"A. He said that the drugs in the residence were all in this one particular bedroom and the remainder of the house which was owned by his brother-in-law was clean." [Tr. 92]

In *Deer v. State*, Okl.Cr., 530 P.2d 568, at 569 (1974), we stated:

". . . We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict as it is the exclusive province of the jury to weigh the evidence and determine the facts. *Turner v. State*, Okl.Cr., 479 P.2d 631 . . . ."

■ The second proposition urged by the defendant is that the officers failed to properly execute, serve and return the search warrant. We have previously addressed the question of execution and service of the warrant and need only say that failure to make a proper return of a search warrant is not enough to invalidate an otherwise valid search. *Micklick v. State*, Okl.Cr., 285 P.2d 462 (1955).

The final proposition urged by the defendant is that the trial court erred in overruling his motion for a directed verdict. An examination of the record reflects that the State presented sufficient evidence to prove a prima facie case. *Deer v. State*, supra. Accordingly, the defendant's sixth assignment of error is also found to be without merit.

For the reasons set forth above, it is the opinion of this Court that the judgment and sentence appealed from should be, and the same is hereby, *affirmed*.

BRETT, P. J., and BLISS, J., concur.