Roger D. MILLS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-77-493.

Court of Criminal Appeals of Oklahoma.

March 2, 1979.

As Corrected May 7, 1979.

As Corrected June 26, 1979.

Ronald H. Mook, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Mary Kathleen Rhodes, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

Appellant, Roger D. Mills, hereinafter referred to as defendant, was charged by Information in the District Court of Tulsa County, Oklahoma, with Possession of Heroin With Intent to Distribute, in violation of 63 O.S.Supp.1975, § 2–401 ¶ B, in Case No. CRF-76–1736, and with Possession of Cocaine, in violation of 63 O.S.Supp.1972,

§ 2–402 ¶ B 1, in Case No. CRF–76–1735. Following a jury trial on the heroin charge and guilty verdict, defendant was sentenced to ten (10) years imprisonment. Jury trial was waived on the charge of Possession of Cocaine, and defendant was found guilty and sentenced to ten (10) years imprisonment to run concurrently with the sentence imposed by the jury in CRF–76–1736.

The pertinent facts are that Tulsa police officers Donald Wayne Bell and Jimmy Lee Sherl set up surveillance outside defendant's residence at approximately 6:00 A.M. on June 25, 1976, in order to execute a search warrant issued the day before. The officers waited to execute the warrant until someone exited or entered the residence because it had iron bars on the doors and windows, and the officers were afraid that if they knocked on the door and announced their authority any evidence located or stored therein would be destroyed. .

At approximately 10:30 A.M. on June 25th, defendant and a female companion left the residence and entered a vehicle in the driveway. The two officers, dressed in civilian clothes, ran toward the vehicle shouting they were police officers and had a search warrant for the residence. Defendant backed the car into the street. There he was stopped at gunpoint by the officers.

Officer Sherl corroborated the testimony of Officer Bell concerning the logistics involved in restraining the defendant and testified that as defendant started backing out of the driveway, he was struck and knocked backwards several feet, but not injured. He further stated that while standing next to the driver's door, he saw a pink kleenex in defendant's hand, which defendant appeared to drop as his hands went up.

Officer Bell drove the vehicle back into the driveway while Officer Sherl took the defendant and his companion to the front porch, delivered a copy of the search warrant, and requested defendant to unlock the front door of the residence, which defendant did. Once inside Officer Bell called Officer Nolin and waited for him before beginning the search. Officer Nolin arrived and read the defendant his *Miranda* rights. Officer Bell then searched the vehicle, finding eleven bendels of heroin inside a pink kleenex under the front seat. The officers next searched the residence and found, in the southeast bedroom, two balloons filled with a substance which proved to be heroin, one containing approximately one and one-quarter ounces and the other containing one-half ounce heroin. Cocaine was found in the ice box, and pieces of tinfoil containing a black substance similar to hashish were also discovered. In addition to the above contraband, the officers found lactose, a substance used for cutting heroin, and a set of scales used for measuring substances in grams.

Defendant's trial testimony reflects he had no knowledge of the heroin, had been out of state, and had given access of the house and subject vehicle to Emily Grant, so that the house could be checked while he and his wife were away.

Emily Grant corroborated the defendant's testimony, stating she and two other women (Patricia Armstrong and Yvette Severs) had obtained heroin in Oklahoma City and taken it to the defendant's Tulsa residence where they cut it with lactose, weighed it on defendant's scale, packaged it, shot up, and left most of the controlled substance at the house because Grant's probation officer had threatened to have her own house searched. Grant testified that upon leaving defendant's residence she took eleven "pills" of heroin with her in a pink kleenex which she evidently lost in the defendant's car. Patricia Armstrong, having been granted immunity from prosecution, basically corroborated the testimony of Emily Grant.

█ In his first assignment of error defendant attacks the trial court's action in overruling his Motion to Quash the search warrant as the product of a deficient affidavit because it (1) failed to set out the "underlying circumstances" upon which the magistrate could independently judge the

validity of the informant's conclusions as to the defendant's possession of narcotics; and (2) failed to state facts showing the informant's credibility or the reliability of his or her information, as required under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1969).

The rule enunciated in *Aguilar,* supra, as enlarged in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), was adopted by this Court in *Leonard v. State,* Okl.Cr., 453 P.2d 257 (1969), where we said in the pertinent part of the First Syllabus:

"* * * if based upon hearsay information of a reliable informant, it must contain positive language, under oath, setting forth in detail why the informant is deemed to be reliable in order that the magistrate can judicially determine whether the informant is, in fact, reliable; and should further set forth in detail whether the informant, himself, observed the violation, or the presence of contraband, [articles to be seized], upon the premises; * * *"

The affidavit for search warrant herein provides as follows:

"That ROGER MILLS has in his possession and concealed in the above described dwelling a large quantity of HEROIN. Said informant stated to your affiant that he was inside said dwelling during the past 24 hours and personally observed ROGER MILLS in possession of several plastic bags containing a brownish substance which the alleged violator, ROGER MILLS, stated, 'was some mighty fine Heroin.' Informant also related to your affiant that he observed a young black female enter the residence and have conversation with the alleged violator, ROGER MILLS. Said informant stated to your affiant that he then observed ROGER MILLS placing the material which ROGER MILLS stated was Heroin into various colored balloons and giving approximately 10 of them to the black female.

"Your affiant along with Inv. Jim Sherl, who had previously set up a surveillance on the residence before the informant entered it, observed the aforementioned black female enter the residence and exit the residence. Your affiant and Inv. Jim Sherl recognized this Negro female to be YVETTE SEVERS, a known Heroin addict and prostitute.

"Your affiant further states that ROGER MILLS has been charged in Tulsa County District Court on at least 5 occasions with drug offenses and is known by your affiant and Inv. Jim Sherl to be very active in trafficking in the distribution of Heroin in Tulsa County.

"Your affiant further states that the said informant has been inside the alleged violator, ROGER MILL'S residence during the past 24 hours. That he personally observed ROGER MILLS in possession of a large quantity of HEROIN, that he had conversation with the alleged violator, ROGER MILLS, concerning the quality of the Heroin which the alleged violator ROGER MILLS had in his possession. The said informant is a Heroin addict and is able to recognize Heroin.

"Your affiant further states that he has known said informant for a period of approximately three (3) years. During this time, said informant has provided your affiant with information concerning narcotic traffic in Tulsa County. On each and every occasion his information has proven to be reliable, correct and true. The information that he has provided to your affiant has resulted in the arrests of numerous people and the convictions of several of these people charged with drug offenses in Tulsa County District Court. His information has resulted in the confiscation of several thousand dollars worth of Heroin."

A review of the affidavit reveals it to be similar to the affidavit held constitutionally valid in *Guthrey v. State,* Okl.Cr., 507 P.2d 556 (1973). The affidavit in *Guthrey,* supra, stated affiant received information from a heretofore proven reliable, confidential informant, who had in the past given information in reference to narcotics, and narcotic offenders and as a result of this infor-

mation the affiant had made a number of arrests, getting convictions in some of the cases. The informant in that case stated to the affiant that shortly before the issuance of the warrant he was at the subject address and observed the narcotics and observed known narcotic users and characters with felony records.

We conclude, based on the foregoing, that the instant affidavit set forth sufficient grounds for the magistrate to consider the information reliable and from which he could also judge the credibility of the informant so as to establish probable cause for the issuance of the warrant. Therefore, we find no error in denying defendant's Motion to Quash the search warrant and hold the first assignment of error to be without merit.

■ In his second assignment of error the defendant contends the Trial Court erred in overruling his Motion to Suppress evidence that was the product of an unlawful procedure in the issuance, service, and execution of the search warrant. In particular, defendant argues there was no showing that the person alleged to have possession of the controlled drugs was who he was alleged to be in the search warrant.

We note the affidavit identified the person by name, that he was known to the informant in person, that he owned the house under surveillance, and that the informant observed the heroin in defendant's possession 24 hours before the warrant issued. When the affidavit is interpreted in a commonsense rather than a hypertechnical manner, as suggested by *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), we find no lack of identification which would support defendant's contention and conclude probable cause existed to allow issuance of the warrant.

■ Next, defendant attacks execution of the warrant for failure of the officers to comply with 22 O.S.1971, § 1228. That statute provides:

"The officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he be refused admittance."

In this case we find there was no reason to comply with § 1228, supra, because the officer was not refused admittance to the residence. Officer Bell gave the defendant a copy of the search warrant, asked him if anyone was inside the residence, to which defendant responded in the negative, and then directed defendant to unlock the door. The defendant complied.

■ It is next contended that through the coercion of the defendant and by using him as their agent, the officers constructively broke into the residence, and thus any evidence obtained by virtue of such an illegal search should have been suppressed. This same contention was determined to be without merit in *Gamble v. State,* Okl.Cr., 546 P.2d 1336 (1976), where similar facts existed. There the defendant was stopped by officers after leaving his residence, escorted back to the house where he was served with a warrant, and he then unlocked the door with his key. We there held the execution of the warrant to be valid because the facts showed the defendant was aware of the authority and presence of the police, and it was a situation where, as here, an announcement of authority and presence would have been a useless gesture and subjected evidence to possible destruction.

In support of the above position defendant relies on *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1969). We find that case inapplicable herein because there the police entered defendant's home by opening an unlocked door and entering without announcing their authority or purpose, while here the defendant himself opened the door. For the above reasons, we hold defendant's argument of error in the execution, service, or issuance of the search warrant to be without foundation.

■ Defendant's third assignment of error is that the court erred in overruling his Motion to Suppress all evidence that was

the fruit of an unlawful arrest, including the defendant's alleged actual possession of the contraband, incriminating statements to the police at the house, and all evidence obtained prior to his booking in the Tulsa County jail. It is also argued that the illegal arrest had the effect of placing defendant in possession of the contraband discovered pursuant to the search warrant and that therefore that evidence was inadmissible.

Defendant was restrained and submitted to the officers. We will assume for the sake of argument that an arrest was made by the officers at the time they stopped defendant's car at gunpoint. We must next determine whether such a warrantless arrest was valid as based upon probable cause. The applicable test was set forth in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), as adopted by this state in *Duke v. State,* Okl.Cr., 548 P.2d 230 (1976):

> " . . . whether at [the moment the arrest was made] the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense . . . ."

This court has also held that the use of the term "probable cause" imports that there may not be absolute irrefutable cause. See *Reynolds v. State,* Okl.Cr., 575 P.2d 628 (1978); *Satterlee v. State,* Okl.Cr., 549 P.2d 104 (1976).

In the case at bar, Officer Bell was the affiant in the affidavit for the search warrant. Based on facts related by the informant and what the informant had seen in defendant's possession the day before, there was reason to believe defendant was in possession of controlled dangerous substances. Defendant's behavior in attempting to drive away from the residence as the officers approached shouting they had a search warrant lends further support to the belief that a crime had been committed and that probable cause existed to arrest defendant under the test set forth in *Duke,* supra.

We also find persuasive the case of *Tittle v. State,* Okl.Cr., 539 P.2d 422 (1975), in which a warrantless arrest of defendant was made at his place of employment based on information from a confidential informant who stated he had seen narcotics in defendant's car. A search warrant for the automobile was obtained prior to the arrest, and the court upheld the arrest as being based on probable cause to believe the defendant had committed a felony by previously making drug sales. The court further held that contraband found during the search incident to that arrest was also admissible in evidence and not an invasion of defendant's constitutional rights.

■ Defendant herein also contends that his statements made subsequent to the arrest were inadmissible. There is no merit to that contention because those statements were not made until after he had been given the *Miranda* warnings and because we have previously determined the search was valid.

■ The defendant's contention that there is no evidence placing him in possession and control of the illegal substances found in the house is untenable. There is abundant evidence from which the jury could find his ownership of the said substances. Defendant had control and possession of the residence which he owned, possessed the keys thereto, and a number of letters addressed to defendant at that address were found. Therefore, we find no merit to defendant's third assignment of error.

■ Defendant alleges in his fourth assignment of error that the court improperly overruled his Motion to Quash the search warrant on the ground it was illegal as being the product of a prior unlawful search. This contention is predicated on the fact that approximately 24 hours before the warrant was issued an informant acted as agent of the police when he went to defendant's residence to gather evidence which would later serve as a basis for the affidavit and warrant. It is asserted that the informant's observations amounted to an illegal search.

This same argument was found to be without merit in *Gamble v. State,* Okl.Cr., 546 P.2d 1336 (1976), where the court said:

"* * * Clearly, the informant was present only to detect whether or not the defendant was selling heroin. It was the informant's detection of the probability that a crime was being committed that was essential for the issuance of the search warrant. No evidence was offered by the State or the defendant to give credence to the claim that the informer gathered evidence illegally while at the house. Therefore, the District Court did not err in overruling the Motion to Quash the search warrant."

In the case at bar, the preliminary hearing testimony of Yvette Severs that she was coerced into setting defendant up under threats of prosecution for another offense is the only evidence offered to prove the informant was acting as a police agent. Such testimony is in direct conflict with that of the officers who stated there was an informant other than Yvette Severs. We find her testimony insufficient of itself to give credence to the claim that the warrant was issued based on a police agent's impermissible activity, since there is nothing in the due process clause of the Fourteenth Amendment that requires an assumption that the officer was committing perjury. See *McCray v. Illinois,* 386 U.S. 300, 361, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Based on the foregoing, we hold defendant's fourth assignment of error to be without merit.

Defendant argues in his fifth assignment of error that the court improperly overruled his motion to require the State to reveal the informant's identity. In asserting error, defendant has relied upon *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1959), in which the court said that where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to an accused's defense, or essential to a fair determination of a cause, the privilege of nondisclosure must give way. In *Roviaro,* supra, nondisclosure of the informant was held to constitute reversible error, since the informant had been an active participant in the illegal activity. He had not only helped set up the crime, but had been a participant in the actual conduct that was a crime. In that case the informer was the sole participant other than the accused in the transaction charged. Here, there was no evidence the informant played a prominent role in the crime other than relating information upon which to predicate probable cause for issuance of a search warrant. This does not go to the guilt or innocence of the accused.

We recognized in *Kovash v. State,* Okl.Cr., 519 P.2d 517 (1974), that the privilege of nondisclosure is not absolute and that upon a timely request it is incumbent upon the defendant to show by a preponderance of the evidence that the disclosure is relevant to a fair defense. *Woodrow v. State,* Okl.Cr., 554 P.2d 70 (1976). Whether disclosure is compelled is a matter for the discretion of the trial court which must make its determination by balancing the policy reasons underlying the privilege against the defendant's right to prepare his defense. See *Corbett v. State,* Okl.Cr., 527 P.2d 200 (1974).

We hold the trial judge did not abuse his discretion in overruling the motion to compel disclosure of the informant's identity as defendant failed to establish by a preponderance of the evidence that disclosure was relevant to a fair defense. Thus, defendant's fifth assignment of error is not persuasive.

In his sixth assignment of error, the defendant argues the court erred in overruling his Motion for Mistrial based upon an evidentiary harpoon by Officer Bell. The complained of passage is found at page 416 of the transcript:

"Q. Did you see Yvette Severs . . . Do you know Yvette Severs?

"A. Yes, I do.

"Q. Did you see her there that day?

"A. Yes.

"Q. What time?

"OFFICER BELL: Your Honor, if I answer that question, I'll reveal the identity of the informant."

After this remark was made, defense counsel objected and asked for a mistrial which was overruled. Thereafter, out of the hearing of the jury, the witness was cautioned to avoid mentioning anything about another person. Later, the court admonished the jury to disregard the statement.

While we agree that the officer's comment was error and not responsive to the question, we do not agree that it rose to the degree normally referred to in categorizing a statement as an "evidentiary harpoon", since such statements generally reflect on a defendant's reputation, character, or previous convictions, before such has become an element of the trial. See *Robinson v. State,* Okl.Cr., 507 P.2d 1296 (1973); *Green v. State,* Okl.Cr., 481 P.2d 805 (1971); and *Wright v. State,* Okl.Cr., 325 P.2d 1089 (1958).

An "evidentiary harpoon" was defined in *Wright,* supra, as that which has been willfully jabbed into the defendant and then jerked out by an admonition to the jury to disregard the same. Ultimately, the question we must answer is whether the defendant's right to a fair and impartial trial was materially prejudiced thereby or whether the alleged "harpoon" was harmless error cured by the trial court's subsequent action.

■ Admissibility of evidence is within the court's discretion and will not be reversed on appeal without a showing of severe prejudice or a breach of defendant's fundamental rights. *Rose v. State,* Okl.Cr., 509 P.2d 1368 (1973). Considering all the circumstances of this case, we hold the comment was harmless error and conclude the jury did not base its decision on the single remark of Officer Bell. While in a close case of guilt involving "evidentiary harpoons" such error might be sufficient to grant a new trial, or where guilt is strongly established, the court might reduce the sentence imposed (See *Green v. State,* Okl.Cr., 481 P.2d 805 (1971)), we find the error here insufficient of itself to justify reversal or modification. Here the evidence strongly supports the conviction, the question of the guilt of the defendant was not close, and the punishment was moderate.

In his seventh assignment of error, defendant attacks the trial court's excusing defense witness Patricia Armstrong after she had twice taken the Fifth Amendment, by examining her outside the hearing of the jury in the presence of the prosecutor, and by granting her immunity upon the court's own motion.

■ Since the testimony of witness Armstrong was exculpatory with respect to the defendant, and corroborated the previous testimony of defense witness Emily Grant, there could have been no prejudice to the defendant. Since the defendant must prove prejudice to justify reversal, (See *Sallee v. State,* Okl.Cr., 544 P.2d 902 (1975)), we will not consider his allegations of error.

■ The defendant's eighth assignment of error is that the court erred in failing to grant a mistrial due to the improper closing arguments by the prosecutor. The first argument to which defendant objects is as follows:

"I submit too that Roger Mills is guilty of the crime of possession of heroin with intent to distribute and move for a . . .

Mr. Mook: We object, your Honor, and move for a mistrial.

The Court: Overruled."

Defendant argues that the prosecutor's statement of his personal opinion as to the guilt of the defendant is prejudicial and an invasion of the province of the jury. We find little merit to this contention. The word "submit" means to commit to the discretion of others, as when an advocate submits a proposition for approval of the court. See Black's Law Dictionary (1968). The prosecutor was not expressing his personal opinion; he was setting forth his contention that the defendant was guilty as charged which he had every right to do.

■■ Next, defendant contends there was a second closing argument impropriety

when the prosecutor made a statement regarding a taped conversation between officer Bell and the defendant which the defendant had not produced at trial. Defendant asserts this was evidence outside the record which implied his guilt. We find this line of argument was within the testimony given at trial and thus a permissible subject for closing argument. As was pointed out in *Parker v. State,* Okl.Cr., 556 P.2d 1298 (1976):

> " * * * Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence, and any inferences or deductions arising from it. It is only when the State is grossly improper and unwarranted upon some point which may have affected a defendant's rights that a reversal will be granted because of improper argument. (cases cited) * * * "

Based on the foregoing, we find defendant's eighth assignment of error unpersuasive.

In his ninth assignment of error defendant argues the trial court improperly overruled his objection to the State's rebuttal testimony. The purpose of rebuttal testimony was set forth in *Schneider v. State,* Okl.Cr., 538 P.2d 1088 (1975) as follows:

> "rebuttal testimony may be offered to explain, repel, counteract, disprove, or destroy facts given in evidence by an adverse party, as well as to clarify a disputed point, notwithstanding that the same testimony might have been introduced in chief, and the introduction of such evidence is matter of discretion for trial court which will not be ground for reversal absent an abuse thereof."

See Also *Tharps v. State,* Okl.Cr., 555 P.2d 1054 (1976).

▮▮ From our review of the subject matter covered on rebuttal, we find it explains and repels evidence offered by the defense. We note introduction of the testimony on rebuttal is a matter of discretion, which will not be a ground for reversal absent an abuse thereof, *Schneider,* supra. We hold the record does not support defendant's contention.

▮ Finally, the defendant argues the court erred in bringing him to trial in Case No. CRF–76–1735, on the charge of Possession of Cocaine, in that it violated his Fifth Amendment right against double jeopardy since the cocaine was admitted into evidence in the trial of Case No. CRF–76–1736, for Possession of Heroin.

The defendant relies entirely on *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), where the defendant was convicted of felony murder based on robbery with firearms. After the murder conviction was entered, the defendant was tried on the charge of robbery with firearms, the elements of which had already been proven in the first trial. Holding the double jeopardy clause barred the robbery prosecution, the Supreme Court stated:

> "When, as here, conviction for a greater crime, murder, cannot be had without conviction for the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction for the greater one. . . . " (Footnote omitted, citations omitted)

The instant case, however, is distinguishable from *Harris.* Possession of Cocaine is not a lesser included offense of Possession of Heroin With Intent to Distribute. A conviction for possession of heroin with the intent to distribute could be had without a conviction for possession of cocaine.

A situation analogous to the one at bar is found in *Payne v. State,* Okl.Cr., 520 P.2d 694 (1974). In *Payne,* the defendant was charged with the sale of an alcoholic beverage without a license. During execution of a search warrant for the defendant's premises, several cases of liquor were seized. The defendant contended that the evidence seized was inadmissible as it tended to connect the defendant with the commission of another crime. This Court held at 520 P.2d page 696 that "the complained of evidence was properly admitted for two reasons: (1) to show intent, this being an exception to

the above rule [evidence of other crimes]; and, (2) as part of the res gestae."

More recently, in *Davis v. State*, Okl.Cr., 560 P.2d 1051 (1977), testimony concerning the recovery of marihuana during the search of a residence was ruled admissible in a trial of possession barbiturates with intent to distribute. This Court, in affirming the conviction, held that the admission of the evidence was proper because it was found during the search and was part of the res gestae.

Based on the foregoing, we hold that the admission of the cocaine in the trial for possession of heroin with the intent to distribute did not bar the State from later prosecuting the defendant for possession of cocaine. The cocaine admitted in the heroin trial was a part of the res gestae of the offense of possession of heroin with intent to distribute, and it cannot be said that the appellant was twice placed in jeopardy for possession of cocaine.

For the above and foregoing reasons, the judgment and sentence of the court below is AFFIRMED.

IT IS SO ORDERED.

TOM R. CORNISH, P. J.
TOM BRETT, J.
HEZ J. BUSSEY, J.