Bobby Glen **PRUITT** et al., Appellants,

v.

The **STATE** of Oklahoma, Appellee.

Nos. F–73–108—F–73–110.

Court of Criminal Appeals of Oklahoma.

Jan. 16, 1974.

As Amended Jan. 18, 1974.

Rehearing Denied Feb. 19, 1974.

Don Anderson, Public Defender, Oklahoma County, Charles Adams, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellants, Bobby Glen Pruitt, Willie Junior Thomas, Randell Neal Newton and George Wright Smith, Jr., hereinafter referred to as defendant Pruitt, defendant Thomas, defendant Newton and defendant Smith, were charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–72–1944, for the offense of Robbery with Firearms (After Former

Conviction as to defendant Newton), their punishment was fixed at fifty (50) years for defendant Pruitt, fifty (50) years for defendant Thomas, one hundred seventy-five (175) years for defendant Newton and one hundred fifty (150) years for defendant· Smith. From said judgments and sentences, timely appeals have been perfected to this Court. Because of similar issues which are urged in the appeals, the cases have been consolidated for decision.

At the trial Brady Whitney testified that he was retired and lived with his wife in the 4700 block of N. E. 23rd in Oklahoma City; that on the afternoon of August 9, 1972, three neighbor children were visiting at his home. At approximately 1:45 p. m. four black men approached the house and pushed him up the steps to the porch. One produced a gun, another a knife and they demanded money. He identified in court the four defendants as the same men who were at his house on the same day in question. They pushed him into the house and one of them took his billfold containing two $20 bills. He identified State's Exhibit 1 as a gun taken by one of the defendants and used to strike him about the head. They pushed him into the dining room where they tied him up with electric cord from the lights in the house. His wife was also tied up to a chair. Defendants hit him with the butt end of the pistol and poured whiskey on his head, burning his eyes. He was confined to the hospital for about two weeks. Defendants ramsacked the house and took three blankets, a shotgun, this pistol and some silver dollars.

Muriel Whitney, Brady Whitney's wife, testified that she was home with her husband and the three teenage visitors on the afternoon in question. At approximately 1:45 p. m. four colored males came up on the driveway to the house. Two of them grabbed her husband and pushed him inside the house.[1] Defendant Smith had the gun

---

1. No witness prior to Officer Acox identified any defendant by name in court, but always by shirt or sweater color. Since the colors of the shirts worn in court were not disputed, defendants will be referred to by name hereinafter where the witness has clearly indicated a particular defendant by shirt or sweater color.

as the four entered the house and defendant Pruitt demanded money and took Mr. Whitney's shotgun. Defendant Thomas slapped Mrs. Whitney. Defendant Pruitt tied her and her husband in a chair and said that she would be killed if she did not do what they said. One of the Herr girls was also tied in a chair. The house was thoroughly ramsacked and vandalized. She testified that certain items of food stuff, including meat processed at a locker plant bearing storage wrapper number 273, were missing. Her wedding ring, $45 and several silver dollars were taken from the house. She identified State's Exhibit 3 as the meat wrappers and State's Exhibit 5 as her wedding ring. The entire episode lasted between one and one and a half hours.

Vivian Herr, age sixteen, testified that she, her brother and sister were visiting the Whitneys on the afternoon in question; that at approximately 1:45 p. m. defendant Smith came to the house and grabbed Mr. Whitney. Four black males came into the house and defendant Smith grabbed her, pointing a gun at her head. Defendant Smith placed a knife to her throat and asked "Where is the other girl?" She called for her sister and she came out from the bedroom. She, her sister and little brother were taken upstairs by defendant Smith where her little brother was tied up. She returned downstairs with defendant Smith and observed defendants Pruitt and Thomas "tearing the house apart." Defendant Smith took her into a bedroom and told her to take her pants off. She refused and defendant Smith put a gag in her mouth. She managed to get away from Defendant Smith and went into the living room. She observed defendant Newton striking Mr. Whitney with a rifle. She was taken into the saddle room adjoining the kitchen and told the same thing as she had been told in the bedroom. At that moment defendant Smith entered and asked her if she knew where any money was. She got a cigar box and gave it to defendant Newton. Defendant Pruitt asked her how old she was and she replied

"Thirteen." Defendant Pruitt said "well you're too young." Defendant Pruitt took her into the living room and tied her to a chair with some electrical cord. They continued to search the house and finally found a metal tool box containing silver dollars. Defendant Newton went over to Mr. Whitney and started hitting him with his hands and the rifle. She observed defendant Smith bring her sister downstairs and take her into the saddle room. Defendant Smith closed the door and she heard her sister screaming for help. One of the defendants poured a bottle of brandy over Mr. Whitney's head and poured perfume over Mrs. Whitney's head. She testified that the defendants were present in the house about an hour and a half.

Linda Herr, age eighteen, testified that she was at the Whitney house on the afternoon in question and saw four blacks approach. Two of them grabbed Mr. Whitney and she ran upstairs. She hid under the bed and two of them came into the bedroom telling her to come out. They took her into the living room and then defendant Smith took her, her sister and brother upstairs. He tied her and her brother up and took her sister back downstairs. Defendant Smith soon returned and took her downstairs. He put a gag in her mouth and took her into the saddle room. He pointed a gun at her head and told her he would hurt her if she would not do what he wanted her to. She testified that she was in the room with defendant Smith for ten or fifteen minutes. He then took her back upstairs and tied her hands and feet. Defendant Thomas came into the bedroom and asked her where the car keys were. When she got free and went outside, she discovered that her purse was missing. She identified State's Exhibit 6 as her driver's license that had been in her purse.

Detective Acox testified that he investigated the robbery at the Whitney home and found the "complete house in a state of disarray." He obtained a search warrant for 3202½ N. Prospect, which was

occupied by the four defendants, and one Eddie Ellis. Upon searching the residence he found the meat wrappers, State's Exhibit 3, in a trash can and the others in the refrigerator. He also found State's Exhibit 6, Linda Herr's driver's license, in the closet of a bedroom. He identified State's Exhibit 1, a .22 caliber pistol, and State's Exhibit 5, a diamond ring, which he recovered from Parks' Pawn Shop.

Officer Horn testified that he investigated the robbery arriving at approximately 3:00 p. m. After talking to the witnesses, he secured the crime scene.

Officer Canary, a fingerprint technician, testified that he investigated the scene and found fingerprints of defendant Newton's "seven or nine of his ten fingers." One of the fingerprints was on a cigar box.

Leroy Parks testified that he operated a pawn shop on North Eastern in Oklahoma City and on August 11, 1972, took in pawn for $45 a diamond ring, State's Exhibit 5, and a pistol, State's Exhibit 1 from defendant Newton. Defendant Newton gave the name Dwight Nichols. Defendants Smith and Thomas were present with Newton.

Detective Kirby testified that in the course of the investigation of the Whitney robbery, he went to Parks' Pawn Shop, and found a .22 caliber revolver, a shotgun and a ring.

Tyrone Jeffrey testified that he lived at 3204½ N. Prospect, two doors from the four defendants' residence; that on August 11, 1972, he drove them to Wichita, Kansas.

For the defense, defendant Newton testified that on August 9, 1972, he was living with Eddie Ellis at 3202½ N. Prospect. He stayed at home until approximately 11:00 a. m. when he went downtown to look for a job. Around 3:00 or 4:00 p. m. he went to Bryant Center where he met Eddie Ellis. Ellis drove him home in an orange Maverick. The next day he and Ellis went to Parks' Pawn Shop where he pawned a .22 caliber revolver and a wedding ring using a driver's license provided him by Ellis. He went to Wichita with the other three defendants to visit an uncle. After spending several days in Wichita, they went to California where he was arrested. He waived extradition to Oklahoma. He testified that he knew of the Whitney farm because he used to live on N. E. 23rd, but denied having been there and denied having participated in the robbery. He admitted a prior conviction for Second Degree Burglary.

Deputy Russell Hubbard testified that he was custodian of the jail records and identified Defendant's Exhibit 1 as a mug shot of Eddie Eugene Ellis taken August 16, 1972, and Defendant's Exhibit 2 as a mug shot of defendant Smith taken September 11, 1972.

Eddie Eugene Ellis testified that on August 9, 1972, he lived at 3202½ N. Prospect with defendant Thomas. Defendant Pruitt and defendant Newton also lived there from time to time. He further testified that on the morning of August 9, 1972, he was in McAlester where he picked up his brother who had been released from the penitentiary. He returned to Oklahoma City at approximately noon. He went once, "maybe twice" to Parks' Pawn Shop with proceeds of the Whitney robbery, pawning a shotgun for $7. He was arrested on August 15 and had in his possession five silver dollars which defendant Thomas had given him. He testified that he was currently confined in the county jail with Receiving Stolen Property. On cross-examination he testified that at about 2:30 or 3:00 p. m. the four defendants arrived in a red or orange Maverick and began unloading boxes of meat and blankets. All four had a conversation concerning their having committed a robbery. He observed State's Exhibit 6, the driver's license, in the closet of his room on August 15. State's Exhibit 3, the meat wrappers, were on meat the defendants brought in on the day of the robbery. State's Exhibit 16,

a shotgun, was brought in by one of the defendants at the same time and Ellis later pawned it at Parks' Pawn Shop.

Dave Gaberiel testified that he operated a filling station across the street from the Whitney residence and that Eddie Ellis used to work there. Two or three days after the Whitney robbery, Ellis came into his station and changed four tires on his car, remarking that he was going to pick up his brother.

Defendant Smith testified that he came to Oklahoma City in July of 1972 and stayed with Eddie Ellis. On the evening of August 8, a dispute occurred between defendant Thomas and Eddie Ellis concerning defendant Thomas' girlfriend and Ellis asked all four defendants to leave. He hitchhiked to Lawton that night to visit his family and friends. The following day he returned to Oklahoma City about 6:00 p. m. He went to Ellis, apartment and when no one was home, he visited with the next door neighbor. He spent the night at Ellis' house and the others came in sometime during the evening. He denied ever being in Parks' Pawn Shop, denied ever being in the Whitney house and denied the robbery. He testified that Eddie Ellis had previously discussed committing a robbery. He went to California to visit defendant Newton's brother.

Norris Thomas testified that he lived at 3202 N. Prospect and knew the defendants and Ellis as neighbors. He arrived home on August 9 about 5:00 p. m. and drank wine with defendant Smith for several hours.

Defendant Pruitt testified that he went to Louisiana on August 2 to visit his relatives, returning to Oklahoma City on August 10. He denied participating in the robbery and denied pawning any articles at the pawn shop.

Defendant Thomas testified that on August 9, 1972, he worked all day thumping watermelons, quitting at approximately 4:00 p. m. He denied participating in the robbery and denied pawning anything at the pawn shop.

The first proposition asserts that hearsay testimony was admitted. The record reflects that testimony was elicited by the prosecuting attorney on cross-examination of Eddie Eugene Ellis about conversations and admissions between the four defendants concerning what they did at the Whitney farm. Defendants candidly admit that "This, of course, is hearsay, but would not seem to violate the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, because here each defendant took the witness stand and was subject to cross-examination by each other defendant. No rights of confrontation were violated and the error would seem to be harmless insofar as testimony relating to the *robbery* was concerned."

■ The second proposition contends that the trial court erred in admitting evidence of rape in a prosecution for Armed Robbery. In dealing with a similar proposition in Kupiec v. State, Okl.Cr., 493 P.2d 444, we stated:

"The first proposition asserts that the trial court erred in allowing evidence of the rape in the armed robbery case, and the armed robbery evidence in the rape case. We are of the opinion that the evidence of the other crime in both cases was properly admitted, and that the same was part of the res gestae. We further observe that the same would be admissible under the exception to the general rule that when a defendant is put on trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial, is inadmissible. In Moulton v. State, Okl.Cr., 476 P.2d 366, we recently stated:

'However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5)

common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other.' "

The third proposition asserts that the judgments are excessive. Suffice it to say from the foregoing statement of facts, the punishments imposed do no shock the conscience of this Court.

In conclusion we observe that defendant Newton filed a pro se supplemental brief. We have carefully examined the allegations contained in said supplemental brief and after considering the same, are of the opinion that they are without merit.

The judgments and sentences are affirmed.

BLISS, P. J., and BRETT, J., concur.