Dianne Katherine SCOTT, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–76–408.

Court of Criminal Appeals of Oklahoma.

Oct. 15, 1976.

As Corrected Oct. 15, 1976.

Baker, Baker & Martin by R. S. Passo, Tulsa, for appellant.

# 1048

Waldo F. Bales, City Atty., Michael J. Fairchild, Asst. City Atty., for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Dianne Katherine Scott, hereinafter referred to as defendant, was charged, tried and convicted in the Municipal Criminal Court of Tulsa, for the crime of Solicitation, in violation of Title 27, Section 154b of the Tulsa Municipal Code. From a punishment fixed at ninety (90) days' imprisonment in the city jail, the defendant brings this timely appeal.

The prosecution's initial witness was Sgt. Robert Cartner, who testified that he had been employed as a Tulsa Police Officer for almost seventeen years, twenty-two months of which was spent on the Vice Squad. He stated that on November 7, 1975, he, Investigator Jim Sherl and an unidentified party went to the defendant's apartment on a prostitution investigation. The three men were admitted to defendant's apartment whereupon the unidentified party introduced Cartner and Sherl as his friends, saying, "They're okay. Treat them nice." The informant then left the apartment. In response to defendant's inquiry as to what Cartner and Sherl would like, Sherl stated that they did not have much money and wanted to know the prices. Defendant listed a "straight date" would cost $30.00, "half and half for $40.-00," or "thirty minutes for $50.00." Cartner testified, over defendant's objections, that a "straight date" was normal sexual intercourse and "half and half" was half oral copulation and half intercourse. The defendant then entered a bedroom with Officer Sherl and was arrested as she was undressing.

Officer Jim Sherl testified that he had been on the police force for five years, four months and on the Vice Squad for three years and four months. His testimony concerning the night of November 7, 1975, was substantially similar to that of Cartner, but he added that the informant said something to the defendant as he was

leaving. Sherl was not able to recall exactly what was said, "but it was not . . . any kind of proposition."

At this point the State rested. The defendant demurred to the prosecution's evidence and the same was overruled.

The defendant did not testify, nor did she present any evidence in her behalf.

■ Defendant's first assignment error holds that her Sixth Amendment right of confrontation was erroneously withheld with the effect of denying the defendant a fair trial. As defendant correctly reiterates, *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) is the controlling law pertinent to the government's privilege of nondisclosure of informants. That law has previously been employed by this Court and a conscientious application of it to this case requires a rejection of defendant's contentions. Whether the government's non-disclosure will endure, or bow to the necessary buttressing of a defense by the defendant depends upon a balancing of the two camps. If, after viewing the entire set of circumstances, the identification of an informer is found to be a necessary and a relevant element of the defense, then the government's privilege must submit to the defendant's right to a fair trial. *Roviaro v. United States,* supra; *Kovash v. State,* Okl.Cr., 519 P.2d 517 (1974); *Corbett v. State,* Okl.Cr., 527 P.2d 200 (1974). The present case displays an informant who left the scene prior to the occurrence of the alleged crime. While the subject did take the officers to defendant's apartment, he was not present when defendant asked what the officers wanted, listed the prices and entered the bedroom. Defendant states on appeal that this informant may have made solicitous remarks to defendant upon leaving, hence, creating a possible entrapment situation. To the contrary, there is positive testimony by Officer Sherl that this comment in no way dealt with sex, prostitution, "or anything involved" in the investigation. Upon these facts, the trial court

did not abuse its discretion in denying the disclosure of the government's informer.

■ Secondly, defendant assigns as error a verdict not supported by sufficient evidence. The record proves this contention to be without merit. In defendant's apartment she asked the officers what they would like. When asked what the price would be she quoted a list of availabilities and the expenses of each. She then entered a bedroom with one of the witnesses and started to undress. This evidence is not so shockingly deficient or unreasonable as to remove the question from the province of the jury. That being the case, we will not disrupt the jury's findings. *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970).

■ In her third assignment of error, the defendant purports that the admission of Officers Cartner's and Sherl's testimony as to the meaning of "straight date" and "half and half" was error as the witnesses were not qualified as experts. This contention is wholly without merit and fully dealt with in *Holt v. State,* 84 Okl.Cr. 283, 181 P.2d 573 (1947), wherein we held:

"The general rule is that the question of competency of a witness to testify as an expert is largely a matter of discretion for the trial court and it requires clear proof of error to warrant a reversal by the appellate court on such matters. . . . ."

See also, *Smith v. State,* Okl.Cr., 509 P.2d 1391.

■ In the final assignment of error, the defendant contends that the ordinance under which she was prosecuted is unconstitutionally vague, a denial of equal protection, and without the scope of governmental regulation. We are of the opinion that (1) the ordinance is not vague and is stated in language that a person of ordinary understanding and intelligence is informed of the acts which are prohibited, and that (2) similar or identical ordinances enacted by other municipalities have successfully withstood the constitutional challenge of denying equal protection and

being without the scope of governmental regulation. [Citations omitted].

In summary, we are of the opinion that the Tulsa City Ordinance is constitutional and a valid exercise of police power.[1]

For the above and foregoing reasons, the judgment and sentence appealed from is accordingly *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.

1. For a discussion of the authority of a municipality to enact ordinances under its police power, see *Elliott v. City of Oklahoma City*, Okl.Cr., 471 P.2d 944 (1970).