**Kenneth Guy CLARKSON, a/k/a Pinkie Clarkson, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–127.**

Court of Criminal Appeals of Oklahoma.

Dec. 3, 1974.

Benjamin E. Butts, Erwin & Butts, Chandler, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Defendant, Kenneth Guy Clarkson, was charged by Information filed in the District Court, Lincoln County, with the commission of the crime of Possession of Marihuana With Intent to Distribute, in violation of 63 O.S., § 2–401. The charge was tried by a jury, defendant was convicted and sentenced to imprisonment in the State penitentiary for a period of two (2) years and fined in the amount of One Thousand ($1,000.00) dollars. (Case No. CRF–73–67.)

The Information filed against the defendant specifically charged that in Lincoln County, on the 22nd day of June, 1973, the defendant "[D]id . . . unlawfully, wilfully and feloniously have in his possession and under his control Marihuana with the felonious intent then and there to unlawfully deliver and distribute the same, said drug being classified as a controlled dangerous substance in Schedule I (C–10) of the Uniform Controlled Dangerous Substances Act of this State," (OR 1).

On June 22, 1973, defendant was arrested outside of Stroud, Oklahoma, for a traffic related offense and as a result thereof was transported to the jail in Chandler, Oklahoma. Defendant's arrest on this traffic charge was held to be illegal by the trial court upon pretrial motions presented by defense counsel and certain evidence obtained as a result of this initial arrest was accordingly excluded from the defendant's trial on this charge.

Relevant portions of the State's evidence adduced at trial show that the following chronicle of events led to the institution of this charge against defendant.

Around 6:00 on the evening of June 22, 1973, Lincoln County Deputy Sheriff Gene Dawson and Jesse Leonard of the Stroud Police Department entered the Jackson County Sheriff's Office. In the waiting room they saw that the defendant and a young woman were seated on a couch. Deputy Sheriff Jerry White, Highway Patrol Trooper Inman and an unidentified dispatcher were also present in the Sheriff's Office although they were not in the waiting room. Officer Dawson took the defendant with him down the hall into an inner office where they remained until 8:00 or 9:00 p.m. when defendant was placed in jail. Officer Dawson testified that from the time defendant went with him into the inner office the defendant did not speak with the young woman in the waiting room, whose name was Dixie Eldridge, until either immediately preceding or just after the time when defendant was placed in jail.

Officer Leonard testified that he remained in the waiting room and was alone with the woman, whose name he knew to be Eldridge, and that he seated himself on a chair directly beside the open door to the dispatcher's office. According to Officer Leonard's testimony another young woman entered the waiting room, sat on the couch with the Eldridge woman and the two then engaged in a whispered conversation. Officer Leonard stated that he was seated from 10 to 15 feet away from the women but that he heard "a word now and then" (Tr. 70) of their conversation. The unknown woman then left the Sheriff's office. Due to the nature of the parts of the conversation he had overheard, Officer Leonard went toward the back of the office where he found Deputy White and relayed this conversation to him. In response to this information the two officers then left the Sheriff's office, and drove to the defendant's house. According to Officer White's testimony the house was about 10 blocks away and the drive took no more than five minutes. When they arrived at the house a car pulled away from in front of the house and they observed a young woman leaving the house with a brown bag in her hand. Officer Leonard recognized her as the woman who had been in the waiting room having a conversation with Dixie Eldridge. The officers approached her, asked what she had in the bag and she replied that it contained clothes. Upon being asked by Officer Leonard if they could look in the sack, she agreed and the officers saw that it contained 18 baggies of a green leafy substance. The woman, whose name was later determined to be Carol Siewart, was then transported to jail. From Officer White's testimony the jury learned that as a result of this occurrence, Carol Siewart had pleaded guilty to a charge of Possession of Marihuana.

Testimony by John McAuliff, chemist for the Oklahoma State Bureau of Investigation, established that random samples of the substance obtained from Carol Siewart were analyzed and identified as marihuana.

Defense counsel asserts that this cause must be reversed as the State's evidence is insufficient to support the jury's verdict of guilt and we find that his contention is well taken.

At the outset we observe that the State did not present one scintilla of evidence affirmatively linking this defendant with the marihuana found in Carol Siewart's possession, nor was there one scintilla of evidence establishing that the marihuana found in her possession was ever in the home of the defendant and under his control and dominion. That she was observed leaving his house with the sack in her hand does not tend to establish anything other than that she had in her possession marihuana. No reasonable inference can be drawn as to where she obtained the sack or the marihuana.

This Court has repeatedly held that where the State relies on wholly circumstantial evidence to prove possession of a

controlled substance, the circumstances shown must, as in all other criminal cases, exclude every other reasonable hypothesis except that of guilt; and proof amounting only to a strong suspicion or a mere probability of guilt is insufficient to sustain a conviction. See Brown v. State, Okl.Cr., 481 P.2d 475 (1971).

While circumstantial evidence may be used to prove constructive joint possession of a controlled substance, the circumstances proved must establish that the accused had knowledge of the presence of the substance and that it was under his control. Brown v. State, supra. The mere presence of an accused in the place where a controlled substance is found is not such sufficient proof of his knowledge and control that his conviction for possession can be sustained. Sturgeon v. State, Okl.Cr., 483 P.2d 335 (1971) and McCarty v. State, Okl.Cr., 525 P.2d 1391, 1393 (1974). Additional independent factors must be proved from which it may be fairly inferred that the accused had knowledge of the presence of the substance and that he had control over it. These additional independent factors may consist of incriminating conduct by the accused (See, Guthrey v. State, Okl.Cr., 507 P.2d 556 [1973]) or statements by the accused which indicate his knowledge and control (See, England v. State, Okl.Cr., 496 P.2d 382 [1972]).

Knowledge of the presence of a controlled substance and control and dominion over that substance are not established by a simple fact that the accused is the possessor of the premises wherein a controlled substance is found. The evidence must show that the accused had exclusive access, use or possession of the premises where contraband is found. Without proof of this exclusive access it may not be fairly inferred that the accused had knowledge of the presence of contraband without additional independent factors which show knowledge and control. See, Luker v. State, Okl.Cr., 504 P.2d 1238 (1973).

Therefore we held in Thornton v. State, Okl.Cr., 481 P.2d 484 (1971) that the evidence was insufficient to connect defendant with marihuana found in the kitchen of his residence. There the defendant and his wife had been in the bedroom with the door partially closed when the police arrived and other persons were in the room where the marihuana was found. Likewise in Osburn v. State, Okl.Cr., 497 P.2d 471 (1972), companion case to Brown v. State, supra, we reversed the defendant's conviction where the evidence showed that the defendant was the lessee of the apartment where marihuana was found but was insufficient to establish that defendant had exclusive use and occupancy of the apartment. Therefore his knowledge of the marihuana and control over it could not be fairly inferred.

The fact that Carol Siewart was apprehended while coming from defendant's house is not sufficient evidence upon which to sustain his conviction for Possession of Marihuana With Intent to Distribute. If anything, her presence at his house shows that defendant did not have exclusive use of and access to the premises. The burden to prove facts from which knowledge and control can be fairly inferred is upon the State. The defendant does not have the burden of proving his absence of knowledge and control over the substance. See Brown v. State, supra, and Osburn v. State, supra.

Here the State did not meet its burden. The evidence presented did not exclude every other reasonable hypothesis except guilt which is required to convict by circumstantial evidence and the evidence was insufficient to support the jury's verdict.

The judgment and sentence appealed from must accordingly be reversed. It is the further order of this Court that unless additional independent factors can be proved by the State to show that the defendant had knowledge and control of this marihuana the charge be dismissed.

Reversed with instructions.

BLISS, P. J., and BRETT, J., concur.