5 F.3d 546
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sam Lee HILL, Petitioner-Appellant,
v.
R. Michael CODY, and Attorney General of Oklahoma,
Respondents-Appellees.
 No. 92-5213.
 United States Court of Appeals, Tenth Circuit.
 Aug. 31, 1993.
 
 Before LOGAN and BRORBY, Circuit Judges, and BRIMMER,[1] District Judge.
 ORDER AND JUDGMENT[2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 Petitioner Sam Lee Hill appeals the denial of his petition for habeas corpus relief, filed pursuant to 28 U.S.C. 2254. He alleges a violation of the Fourth Amendment arising from a facially invalid search warrant, insufficiency of the evidence supporting his convictions, and prosecutorial misconduct. Because we agree that there was insufficient evidence to support his convictions we do not discuss his other contentions.
 * Officers of the Creek County, Oklahoma, Sheriff's Department executed a search warrant for drugs and drug paraphernalia at a mobile home in Creek County on December 26, 1988. The warrant named petitioner as the party to be served at that residence. The officers knocked loudly on the front door of the trailer home, calling out, "Sheriff's office; search warrant!" No one responded, but the officers heard the sound of running footsteps within the trailer. Finding that the door was locked, the officers broke it down. Petitioner's co-defendant, Linda Matthews, was apprehended attempting to flush a plastic bag, later determined to contain methamphetamine, down the toilet. Meanwhile, petitioner was apprehended by officers as he burst out the back door of the trailer, pulling on his jeans, but otherwise undressed.
 Germane to the charges for which petitioner was convicted, the officers' search recovered approximately 35 grams of methamphetamine, approximately 175 grams (7 ounces) of marijuana, two sets of scales, a quantity of small (approximately 10" X 10") ziplock baggies, miscellaneous drug use paraphernalia, and a recipe and list of chemicals required for the manufacture of methamphetamine. Petitioner had no drugs or drug paraphernalia on his person at the time of his arrest, and all the drugs and paraphernalia discovered in the trailer, except that co-defendant Matthews attempted to flush, were concealed from view in closets, drawers, containers, or inside Matthews' purse. There was no evidence at trial that petitioner owned, leased, or rented the trailer or the property on which it was located. No personal property identified as petitioner's was found anywhere in the trailer except his shirt and shoes.
 After a jury trial in state court, during which petitioner did not testify or present any evidence, he was convicted of possession with intent to distribute methamphetamine, possession with intent to distribute marijuana, and possession of paraphernalia. He was sentenced to concurrent terms of fifteen years on the methamphetamine charge and ten years on the marijuana count, as well as a $15,000 fine on the methamphetamine conviction and a $1,000 fine for the conviction of possession of paraphernalia.[3]
 Petitioner timely appealed his conviction to the Oklahoma Criminal Court of Appeals, challenging (1) the validity of the search warrant, claiming that it lacked adequate specificity to satisfy the Fourth Amendment and that it was based on an affidavit lacking sufficient detail to establish the reliability of the affidavit; (2) the evidence as insufficient to convict him of the three charges; and (3) several instances of alleged prosecutorial misconduct during trial. Petitioner's retained counsel raised timely objections to each of these alleged errors during trial. Petitioner's state court appeal was denied on the merits. Hill v. State, No. F-90-1097, slip op. (Okla.Crim.App. Sept.13, 1991) (R.Vol. I tab 1 ex. B).[4]
 Petitioner filed this pro se petition for habeas corpus relief with the federal district court, alleging the same three issues he had brought on direct appeal before the Oklahoma Court of Criminal Appeals. Because each of petitioner's arguments to support his federal habeas corpus petition were raised and rejected on the merits in the Oklahoma Court of Criminal Appeals, petitioner's state remedies were exhausted. See Coleman v. Thompson, 111 S.Ct. 2546, 2554-55 (1991); Miranda v. Cooper, 967 F.2d 392, 397-98 (10th Cir.), cert. denied, 113 S.Ct. 347 (1992); see also Smith v. Atkins, 678 F.2d 883, 885 (10th Cir.1982) ("[the issue] challenging the sufficiency of the evidence to support the verdict, involves solely a question of law which was addressed by the state court on direct appeal and [thus has been exhausted]."); Response to Petition for Writ of Habeas Corpus at 3, Hill v. Cody (N.D.Okla., filed June 1, 1992) (No. 92-C-276-B) (R.Vol. I tab 12 at 3) (respondents conceded that "[t]he Petitioner has exhausted his state remedies").
 The federal district court denied petitioner's petition for writ of habeas corpus, holding that the Fourth Amendment claim could not be recognized in the federal court because the state appellate court had afforded petitioner a full and fair hearing on its merits, that a reasonable jury could have found that there was sufficient evidence to convict him of the three charges, based on the evidence presented at trial, and that the allegedly improper prosecutor's statements were not so prejudicial as to have violated due process. The district court granted petitioner's motion for a certificate of probable cause to proceed on appeal.
 II
 Petitioner claims that his conviction was fundamentally unfair because the government presented insufficient evidence.
 Sufficiency of the evidence for constitutional purposes is ultimately a question of law. As such, we review a habeas challenge of sufficiency to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir.) (citation omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 112 S.Ct. 115 (1991). This is a difficult standard to meet for habeas relief, but we hold that no rational trier of fact could have found petitioner guilty beyond a reasonable doubt of the charged crimes on the evidence the state presented.
 Although we must apply a federal constitutional standard, we must look to Oklahoma law for the elements the state must prove in order to convict. As relevant here, to convict petitioner of possession with intent to distribute methamphetamine, possession with intent to distribute marijuana, and possession of paraphernalia, the state had the burden of proving that petitioner had (1) knowledge of the drugs and paraphernalia, (2) dominion and control over the drugs and paraphernalia, and (3) intent to control the disposition and use of the drugs and paraphernalia. It is also well established under Oklahoma law, in line with the standard universally applied, that "mere proximity to the contraband or mere association with a person who has actual or constructive possession of the contraband, is insufficient to support a conviction. There must be additional evidence establishing the accused's knowledge and control." Rudd v. State, 649 P.2d 791, 794 (Okla.Crim.App.1982) (citations omitted).
 While proof of actual physical possession of a controlled substance is not necessary even a showing of constructive possession requires proof that a defendant have knowledge of its presence and the power and intent to control its disposition or use. Further, guilty knowledge and control cannot be presumed.
 Hishaw v. State, 568 P.2d 643, 644 (Okla.Crim.App.1977) (citing Staples v. State, 528 P.2d 1131, 1133-34 (Okla.Crim.App.1974)). The Oklahoma courts have also held that
 where the State relies on wholly circumstantial evidence to prove possession of a controlled substance, the circumstances shown must, as in all other criminal cases, exclude every other reasonable hypothesis except that of guilt; and proof amounting only to a strong suspicion or a mere probability of guilt is insufficient to sustain a conviction.
 Clarkson v. State, 529 P.2d 542, 544-45 (Okla.Crim.App.1974); accord, e.g., Freeman v. State, 617 P.2d 235, 237 (Okla.Crim.App.1980); Miller v. State, 579 P.2d 200, 202 (Okla.Crim.App.1978).
 This Oklahoma rule circumscribing convictions for possession of drugs based solely on circumstantial evidence was explained in White v. State, 607 P.2d 713 (Okla.Crim.App.1980):
 The rule on circumstantial evidence has been stated two ways in past cases. We have said that circumstantial evidence must exclude every reasonable hypothesis except that of guilt.... We have also said that circumstantial evidence need not exclude every hypothesis other than guilt.... These two expressions are not inconsistent. Evidence may exclude every reasonable hypothesis except guilt without excluding absolutely every hypothesis except guilt.... [T]he jury must still be satisfied beyond a reasonable doubt that the appellant was the guilty party....
 Id. at 715 (citations omitted). "The burden to prove facts from which knowledge and control can be fairly inferred is upon the State. The defendant does not have the burden of proving his absence of knowledge and control over the substance." Clarkson, 529 P.2d at 545; accord, e.g., Lay v. State, 692 P.2d 567, 568 (Okla.Crim.App.1984).
 Petitioner quite possibly was guilty of the crimes charged, but it was the burden of the state to prove his guilt beyond a reasonable doubt. The strategy of defense counsel at trial was to contest the strength of the prosecution's proof, and to challenge the state's contention that the trailer was petitioner's residence and that petitioner was something more than a customer and/or paramour of co-defendant Matthews. Before the trial commenced Matthews pleaded no contest to the charges against her, and she did not testify at petitioner's trial.[5]
 In response to petitioner's direct appeal on this issue, the Oklahoma Court of Criminal Appeals stated the following as sufficient evidence to convict him of the three charges under Oklahoma law:
 The evidence showed that Appellant was discovered running out the back of a mobile home, partially dressed, as law enforcement authorities executed the search warrant. The only other person in the residence was attempting to flush a bag of illegal substances down the toilet. Officers had watched the residence for approximately three months previously and had seen the appellant there on numerous occasions. Officers had also observed several vehicles drive up to the mobile home, the driver enter the trailer for a few minutes, then exit. A reliable informant had told the officers the Appellant had in fact sold illegal substances from the residence. Drug paraphernalia was found throughout the trailer.
 I R. tab 1, ex. B, at 8.
 There are two erroneous and one misleading statement in the Oklahoma court's summary. First, the trial transcript reveals that in two or three months of observation before petitioner's arrest, the officers staking out the residence had seen petitioner visit the trailer only two or three times, for periods of five or ten minutes--not "on numerous occasions." Second, although the officers relied on an informant who allegedly bought drugs from petitioner to secure the search warrant for the trailer, no informant testified at trial, and the prosecution put on no evidence that an informant had purchased illegal substances from the trailer or from petitioner. Finally, although drug paraphernalia were found in the trailer, with the exception of a list of chemicals all the drug paraphernalia revealed by the search were found in a bedroom, stored in the closet, and in various closed containers out of plain sight.[6] Petitioner raised the two discrepancies between the record and the opinion of the Court of Criminal Appeals in a petition for rehearing, which was denied.
 In response to petitioner's claim of insufficient evidence, the federal district court, on habeas corpus review, recited the following as sufficient evidence to convict under Oklahoma law:
 At trial, the jury weighed several items of evidence. First, only Hill and Matthews were present in the mobile home when the police executed the search warrant. After police announced their intent to search the premises, Hill was caught trying to flee the mobile home through the rear door. Hill's desire to quickly escape is bolstered by the fact he did not take the extra time to put on any more clothes even though it was chilly December day. The police also had the mobile home under surveillance for the previous three months and testified that Hill had been seen there several times before.
 With the evidence presented, a reasonable jury could have found that Hill had dominion and control over the illegal substances. After examining all of the evidence presented in the light most favorable to the State, a rational jury could find that Hill had dominion and control of the illegal substances. This is particularly so given the volume of materials seized. Therefore, Hill's second claim for habeas relief based on insufficient evidence is without merit.
 I R. tab 14, at 5-6 (footnotes omitted).
 Following our de novo review of the record, we note that the following evidence was before the jury to support the three charges for which petitioner was convicted: When officers knocked on the locked front door of the trailer, calling out loudly, "Sheriff's office, search warrant!", petitioner ran out the back, pulling on his jeans but otherwise undressed. The only other person in the residence was attempting to flush a bag of methamphetamine down the toilet. Officers had watched the trailer for between two and three months before that day and had seen petitioner stop there for five to ten minute visits on two or three occasions. Officers had also observed two other people making brief visits to the residence on the day of petitioner's arrest. Drugs were found in two bedrooms of the trailer, and drug paraphernalia were found in the back bedroom and the living room. The drug paraphernalia consisted of 10"' X 10" zip-lock baggies, two sets of scales, a marijuana pipe, a recipe for making methamphetamine, a list of chemicals for the manufacture of methamphetamine, and small scissors and other miscellaneous items commonly employed by drug users. None of the drugs or drug paraphernalia seized were in plain view. No personal effects belonging to petitioner were found in any of the rooms of the mobile home except the shirt and shoes he left behind as he ran out the back door. The court sustained defense counsel's repeated objections to witnesses' references to the trailer as petitioner's residence, and the state presented no evidence that he owned, leased, rented, or lived there, or even that he spent extended periods of time there.
 The state presented evidence that officers observed the trailer for approximately thirty minutes between 1:00 p.m. and 3:00 p.m. on the afternoon of petitioner's arrest, which occurred at approximately 4:30 p.m. Although two men made brief visits to the trailer during that early afternoon period, there was no evidence that petitioner was present in the trailer at the time of those visits. Indeed, there was a gap of at least one and a half hours, and perhaps as long as three hours, between the time the two men were observed arriving and leaving the trailer in the early afternoon and the time in the late afternoon when the warrant was served, during which time the trailer was unobserved.
 The government introduced no direct evidence that petitioner exercised any dominion and control over the methamphetamine, marijuana, or paraphernalia seized in the trailer, nor was there evidence that he exercised dominion or control over the premises at which the drugs and paraphernalia were seized. The state's case rested wholly on circumstantial evidence.
 Incriminating conduct can serve as evidence of knowledge and control. Clarkson, 529 P.2d at 545. Petitioner's two or three brief visits to the trailer on other occasions and his rush to leave the trailer by its back door upon the sheriff's announcement of the search warrant could be viewed as such incriminating conduct, showing knowledge and control.[7] However, there are other reasonable explanations for petitioner's earlier visits, including both legal and illegal (but uncharged) conduct. Furthermore, a jury could reasonably infer from petitioner's state of undress at the time of his arrest that he was engaging in intimate relations with Matthews and that this prompted his bolting out the back door upon the arrival of the police, rather than any involvement with methamphetamine or marijuana.
 Thus, in summary, the state's evidence before the jury was that petitioner, who had visited the trailer two or three times for ten to fifteen minutes during a twoto three-month period, was present when the officers arrived with their search warrant; petitioner was undressed, and when the officers demanded entry, tried to run out the back door. That is not sufficient, in our view, for a rational factfinder to find beyond a reasonable doubt that petitioner possessed illegal drugs with intent to distribute, or possessed the drug paraphernalia found in the search of the trailer. To be sure, petitioner offered no explanation for his presence and no evidence that he did not reside in the trailer. But that was not his burden. It was the state's burden in this circumstantial case to exclude every other reasonable hypothesis except guilt, and to prove its case beyond a reasonable doubt. It did not carry its burden.
 The district court's denial of petitioner's petition for habeas corpus relief was in error.
 Petition GRANTED, judgment and conviction VACATED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [2]
 Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation
 
 
 [3]
 Petitioner's original sentence stated that he was convicted for "Unlawful Possession of Controlled Drug with Intent to Distribute, after Former Conviction of a Felony," "Unlawful Possession of Marijuana, with Intent to Distribute, after Former Conviction of a Felony," and "Unlawful Possession of Paraphernalia, after Former Conviction of a Felony." Two years later, upon petitioner's motion, the Creek County, Oklahoma, District Court entered an Order Nunc Pro Tunc, effective June 18, 1990, correcting the judgment and sentence to reflect that petitioner "is convicted and sentenced without a finding of a prior conviction." State v. Hill, No. CRF 89-9 (D.Creek County, Okla., Jan. 27, 1992). Apparently, records for a different individual named "Sam Hill" had been attributed to the petitioner, a characterization that is uncontradicted by respondents
 
 
 [4]
 Subsequently, petitioner brought an unsuccessful pro se state habeas corpus action, claiming ineffective assistance of counsel. R.Vol. I tab 1 exs. C, D. He filed a second pro se habeas corpus petition in state court, bringing several allegations including ineffective assistance of counsel and newly discovered evidence. Id. ex. E. He was permitted to withdraw this second petition before disposition. Id. exs. F, G
 
 
 [5]
 Before petitioner's trial, the court accepted Matthews' plea of no contest to all the charges brought against her, and sentenced her to ten years for each of the drug possession charges and one year for the paraphernalia charge, all to run concurrently. Her prison sentence was subsequently suspended, and she was ordered to serve 1,000 hours of community service within six months and to pay $55.00 to the victim's compensation fund, as well as court costs, within six months. State v. Matthews, No. CRF 89-9 (Creek County Dist.Ct., Okla., Aug. 31, 1990) ("Judgment and Sentence Suspended on Plea of Guilty"). The record includes a report of completion of Matthews' community service requirement on Mar. 5, 1991 (working for the custodian of the county courthouse)
 
 
 [6]
 The paraphernalia were found in Matthews' purse, in a coffee can, inside a carved wooden object, and in the bedroom closet. A list of chemicals used in the manufacture of methamphetamine was found in the living room, apparently with an address book belonging to Matthews
 
 
 [7]
 The trial court instructed that the jury could consider petitioner's flight, but they had to find he departed "with a consciousness of guilt ... to avoid arrest for the crime with which he is charged." Instr. 21